MARY K. LOPER, PLAINTIFF, NOW DEFENDANT IN ERROR, v. WILLIAM E. SOMERS, DEFENDANT, NOW PLAINTIFF IN ERROR.

Argued November 23, 1904—Decided January 27, 1905.

1. Under the assignment of common errors, the Court of Errors and Appeals will not reverse the judgment of the court below, except for error manifest in the record brought up by the writ.

2. When errors specially assigned are not argued by counsel, the Court of Errors and Appeals, under its settled practice, is not obliged to consider them.

3. All matters savoring of technicality being waived, the facts warranted the direction of a verdict for the plaintiff below, under the rule that it is the duty of a trial court to control a jury in its verdict by a binding instruction, when the testimony in the case will not support any other verdict.

On error to the Circuit Court of Atlantic county.

An action *ex contractu* was instituted by the plaintiff below against the defendant below in the Circuit Court in and for the county of Atlantic.

The plaintiff declared upon a sealed bill, bearing date of the 12th day of October, A. D. 1897, made by the defendant, sealed with his seal, and delivered to the plaintiff, whereby he undertook and promised to pay, upon demand, to her or to her order, the sum of $2,000.

The defendant pleaded that he did not undertake and promise in manner and form aforesaid.

The issue joined upon the pleadings was tried in the Circuit Court before a jury.

Premising that the plaintiff, after her opening, proved the making and delivery of the sealed bill and the loan and advancement of the money in the form of four drafts, for $500 each, delivered to the defendant, we may, for present purposes, take the facts as shown by the testimony of the defendant.

"Q. There is an indebtedness here of four drafts, of $500 each; what do they represent; how did that come about?

"A. Well, as near as I can understand, he [Richard F. Loper, husband of the plaintiff] claimed to be such a friend of mine at one time, and I went to him and asked him to assist me; he wanted to buy me a boat for $7,000; but I was tired of the boat business and wanted to get out and go into another business; at that time Mr. Maguire offered me a boat for a certain sum of money, and I talked to Mr. Loper in regard to that, and he said he would look into it; so he investigated the matter and finally decided to buy one for me for, I understand, $2,000—I think it was; that was the understanding.

"Q. Now, he gave you four notes, payable to your order, and by you endorsed to Maguire; were they all given to you on the same day?

"A. If I remember correctly, they were handed to Maguire, there in the office where we were; that was five or six years

ago; I have no doubt that is the way it was—handed to Maguire, and then handed over to me for my signature.

"*Q.* Did you endorse them?

"*A.* On the back.

"*Q.* I show you a note, made payable to Mary K. Loper, and ask if that is your signature?

"*A.* Well, yes; I believe that is my signature, although I can't be certain of anything like that.

"*Q.* Was that first note that you signed for this $2,000 made to Mary K. Loper?

"*A.* No.

"*Q.* To whom was the first note which you signed made payable?

"*A.* To Richard F. Loper.

"*Q.* And how long was it after you gave that first note that this second note came into existence?

"*A.* I can't tell you—probably two or three months.

"*Q.* What?

"*A.* He and Mr. Knorr came in, if I remember correctly, and came into the office, and asked me if I had any objection to making this note out to Mary K. Loper in preference to Mr. Loper; it made no difference to me whom it was made due to if I had to pay it; so in this one, the name was changed.

"*Q.* You paid $500 on account of this note; did you not?

"*A.* Yes, sir.

"By the Court.

"*Q.* Mr. Somers, at the time you signed this note, on which suit is brought, was the old note surrendered to you?

"*A.* I have never seen it; if it was surrendered to me, I never remember having it.

"*Q.* Can you say whether or not it was surrendered?

"*A.* I think not; I think Mr. Loper took the note himself, or tore it up, or destroyed it, or something; I never saw it afterwards.

"*Q.* This was given to Loper, the same way as the prior note?

"*A.* Yes.

"*Q.* And the prior note was given to Loper for the drafts on which you obtained the money?

"*A.* Yes, sir.".

The jury found a verdict in favor of the plaintiff, and judgment final was entered thereupon.

There were four assignments of error, whereof three were based upon exceptions taken to the charge of the court, but at the hearing only the last of the three was pressed, to wit, that the trial judge erred in directing a verdict for the plaintiff and against the defendant.

For the plaintiff in error, *George A. Bourgeois.*

The testimony raised three questions for the jury, to wit: (1) Whether the defendant was indebted to the plaintiff on the note or to some other person; (2) whether one or two notes were given; and, if two, then (3) whether there was any consideration to support the note sued on.

Wherefore the trial judge erred in directing a verdict.

For the plaintiff in error, *Eli H. Chandler.*

The opinion of the court (the foregoing statement having been made) was delivered by

GREEN, J.   1. Under the assignment of common errors, this court will not reverse a judgment, except it be for error manifest in the record brought up by the writ.

In our practice the writ of error brings up, as at common law, the record of the judgment below, or a transcript thereof, and, by statute (*Pamph. L.* 1903, *p.* 592, § 211), the bills of exceptions.   See *Lewis* v. *Lewis,* 37 *Vroom* 251, 252 (1901). The common errors relate only to the record itself (1 *Chit. Arch. Pr.* (12th ed.) 572; *Driscoll* v. *Carlin,* 21 *Vroom* 28, 29 (1887), and when such are assigned this court may reverse, for error manifest in the record, even though such error be not urged in argument.   The court has lately so done in *Rollins* v. *Atlantic City Railroad Co.,* 41 *Id.* 664, 667 (1904).   If, however, the judgment record itself appears,

on inspection, to be sufficient in law, there will be not a reversal but an affirmance. See *Driscoll* v. *Carlin, supra; Mills* v. *Mott,* 30 *Vroom* 15, 16 (1896) ; *Wanamassa Park Association* v. *Clark,* 32 *Id.* 611, 612 (1898). Under the first assignment, therefore, the judgment under review will not be reversed.

2. When errors specially assigned are not argued by counsel, this court, by its settled practice, is not obliged to consider them.

The second and third assignments of error were based upon exceptions taken to portions of the charge of the court below, but at the argument the counsel of the plaintiff in error did not seem to regard them as of sufficient importance to justify discussion, hence the errors alleged have not demanded or received consideration. *Roofing Company* v. *Leather Company,* 38 *Vroom* 566, 571 (1902) ; *Hopwood* v. *Atha & Illingsworth Company,* 39 *Id.* 707, 713 (1902).

3. Waiving all matters which in anywise savor of technicality, we have so far examined the testimony adduced at the trial as to find that the facts warranted the direction of a verdict for the plaintiff. The case is one for an application of the rule—more than once approved in this court—that it is the duty of a trial court to control a jury in its verdict by a binding instruction, when the testimony will not support any other verdict.

At the very outset of our examination into the merits we have found an obstacle in this, that the attorney for the plaintiff in error, in his assignment of error on the direction of a verdict for the plaintiff below (the fourth assignment), fails to point out any ground of error in such direction. That an assignment of error should definitely point out the ground of error is well settled, and has been very recently insisted on in this court. *Donnelly* v. *State,* 2 *Dutcher* 463, 512 (1857) ; *Lutlopp* v. *Heckman,* 41 *Vroom* 272, 273 (1903).

Putting aside this obstacle, we find the defendant below admitting (see his testimony prefixed hereto),

(*a*) That he signed and delivered the first sealed bill, which he commonly spoke of as a note;

.(*b*) That he received the full consideration thereof in the shape of four drafts, on which he obtained the money; and

(*c*) That there was a novation of the first contract, in one form of the third class known to the civil law, the assent of the original creditor (Mr. Loper) being manifested by his evidence in behalf of the plaintiff, and perhaps by his destroying the first bill; the assent of the new creditor (Mrs. Loper) being shown by her demanding payment of the second bill and suing thereon, and the assent of the debtor (Mr. Somers) being manifested by his paying $500 on account of the new bill and acknowledging his signature thereto.

The novation referred to is that form of the class called *delegatio,* wherein the debtor remains the same as at the first, but a new creditor is substituted for the old. This obligation is discussed by Pothier, in his *Treatise on the Law of Obligations (Evans' ed.),* volume 1, pages 434, 444, and it was, at an early day, recognized by the common law. See *Bracton de Leg. Angl., Lib.* 3, *ch.* 2, § 13. In order to the validity of this particular form of the obligation, the concurrence of all three of the parties is requisite—the original creditor, on being otherwise satisfied, discharging the debtor; the new or indicated creditor, accepting the debtor as his own; and the debtor, on being discharged from the original contract, entering into the new obligation. As has been seen, this threefold concurrence existed in the case under review.

In such a state of facts it is plain that no verdict in favor of the plaintiff in error (defendant below) could have been supported, if rendered, and it became the duty of the trial court to control the jury in its action and to direct a verdict for the plaintiff. *Lippincott* v. *Royal Arcanum,* 35 *Vroom* 309, 311 (1899) ; *Anderson* v. *Central Railroad Co.,* 39 *Id.* 269, 272 (1902). As the evidence justified and required such a direction, no charge could rightly have been given other than that which was given. *Whitaker, Receiver,* v. *Miller,* 34 *Id.* 587, 588 (1899). Under the fourth assignment, the one chiefly pressed, there is no error found requiring a reversal.

Let the judgment be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, FORT, GARRETSON, SWAYZE, REED, BOGERT, VOORHEES, VROOM, GREEN.   12.

*For reversal*—None.